**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT HORDIS, VICTORIA HORDIS, and HORDIS FAMILY CABOT, L.P.,** | : : : : | **CIVIL ACTION NO. 3:19-CV-296** |
| **Plaintiffs** | : : | **(Chief Judge Conner)** |
| **v.** | : : | |
| **CABOT OIL & GAS CORPORATION,** | : : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiffs move for leave to file a second amended complaint to assert several new common-law claims against defendant Cabot Oil & Gas Corporation ("Cabot") and to add new factual matter postdating the filing of their initial and first amended complaints. Cabot opposes plaintiffs' motion. For the reasons that follow, we will grant in part and deny in part plaintiffs' motion.

## I.    Factual Background & Procedural History

Plaintiff Hordis Family Cabot, L.P. ("Hordis L.P."), is a limited partnership formed under the laws of the Commonwealth of Pennsylvania. (Doc. 8 ¶ 2). Individual plaintiffs Robert and Victoria Hordis are two of several limited partners of Hordis L.P. (See id. ¶ 3). Other limited partners include Charles and Janet Hordis, Jennifer Austin, and the Catherine Strayer Trust. (See id. ¶¶ 4-7). Plaintiff Robert Hordis is the sole member of Mt. Laurel Group, LLC, the general partner of Hordis L.P. (Id. ¶ 8).

Limited partners Charles and Janet Hordis owned 194.43 acres of land in Lathrop Township, Susquehanna County, Pennsylvania.  (See id. ¶ 13).  In August 2007, they entered a renewable five-year oil and gas lease with Cabot which allows Cabot to use the land, subject to certain restrictions, for production of oil and gas.  (See id. ¶¶ 15-22; Doc. 8-1).  Charles and Janet Hordis later assigned their interest in the lease to Hordis L.P. and conveyed the subject property to plaintiffs Robert and Victoria Hordis.  (Doc. 8 ¶¶ 47-48).  In August 2012, Cabot exercised its option to extend the primary term by an additional five years.  (Id. ¶¶ 17, 19).

The lease includes limitations on how much land Cabot may pool into a single oil-and-gas-producing "unit" (640 acres) and how much each unit may be changed in size once formed (no more than 15 percent).  (Id. ¶¶ 21-22).  According to plaintiffs' first amended complaint, Cabot constructed a well pad on the leased land in August 2013 and drilled four wells off the pad, with each well serving a different unit.  (Id. ¶¶ 25-28).  None of these distinct well units exceeded the 640-acre maximum specified in the lease.  (Id. ¶¶ 29-42).

Plaintiffs allege that Cabot began contacting them in January 2017 about combining their lease with others to pool existing wells into larger "multi-unit wells" which would run through the property and greatly exceed the stated acre limitation.  (Id. ¶¶ 50-52).  Plaintiffs allege that Cabot continued seeking consent, and plaintiffs continued to withhold it, through May 2018.  (Id. ¶¶ 52-62).  Cabot changed course at the end of May when—notwithstanding the lack of consent—it declared its unilateral right to drill multi-unit wells and exercised that right on plaintiffs' land, including through the pooling of three Hordis wells.  (Id. ¶¶ 63-72,

79-83).  Cabot also allegedly reconfigured the layout of one unit containing a Hordis well to avoid violating the pooling restrictions, but which had the effect of enlarging the unit by 22 percent, also in violation of the lease.  (Id. ¶¶ 85-90).  Plaintiffs claim to have rejected all royalties from these multi-unit wells and further claim that Cabot's conduct is causing them irreparable harm, namely, resource dilution.  (Id. ¶¶ 73-78).

Plaintiffs brought this action in February 2019 asserting one claim for breach of contract and seeking a declaratory judgment.  Plaintiffs subsequently amended their complaint, before Cabot filed an answer, to fully list all individual members of Hordis L.P., and Cabot answered the first amended complaint shortly thereafter. The only other activity to date has been the filing of a joint case management plan in July 2019.  Plaintiffs filed the instant motion for leave to file a second amended complaint in November 2019.  The motion is fully briefed and ripe for review.

II.  **Legal Standard**

Federal Rule of Civil Procedure 15 governs the filing of both amended and supplemental pleadings.[1]  See FED. R. CIV. P. 15(a), (d).  Rule 15(a) contemplates amendment of an existing pleading and is intended "to enable a party to assert matters that were overlooked or were unknown" when the original pleading was filed.  Garrett v. Wexford Health, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1473 (3d ed.

---

[1] While styled as a motion for leave to amend, plaintiffs' motion proposes to add new factual allegations as to Cabot's post-pleading conduct and is thus properly construed as a motion to amend *and* to supplement.  See FED. R. CIV. P. 15(a), (d); see also Garrett v. Wexford Health, 938 F.3d 69, 81 (3d Cir. 2019).

2019)).  By contrast, Rule 15(d) contemplates a supplemental pleading that sets out "any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented."  FED. R. CIV. P. 15(d) (emphasis added); <u>see also</u> <u>Garrett</u>, 938 F.3d at 82.  The standard for granting leave under both rules is essentially the same.  <u>See</u> 6 WRIGHT & MILLER, *supra*, § 1504 (citing, *inter alia*, <u>Micron Tech., Inc. v. Rambus Inc.</u>, 409 F. Supp. 2d 552, 558 (D. Del. 2006)).

Under Federal Rule of Civil Procedure 15, leave to amend should be freely given "when justice so requires."  FED. R. CIV. P. 15(a)(2).  In the seminal case of <u>Foman v. Davis</u>, 371 U.S. 178 (1962), the Supreme Court of the United States provided guidance for when leave to amend may be denied.  The circumstances that weigh against granting leave include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility.  <u>Foman</u>, 371 U.S. at 182.  Amendment is considered futile if the pleading, "as amended, would fail to state a claim upon which relief could be granted.'"  *In re* <u>Merck & Co., Inc. Sec., Derivative & ERISA</u> <u>Litig.</u>, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re* <u>Burlington Coat Factory Sec.</u> <u>Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997)).  Rule 15 aims to offer "the maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."  <u>United States v. Thomas</u>, 221 F.3d 435 (3d Cir. 2000) (citations omitted).

### III.   <u>Discussion</u>

Plaintiffs seek leave to file a second amended complaint to clarify and differentiate their breach-of-contract theories, with Count One stating a claim for breach of the lease's express terms and Count Two stating a claim for breach of the lease's implied duty of good faith and fair dealing.  (Doc. 13-2 at 59-64).  Plaintiffs' proposed amended pleading also restates their claim for declaratory relief at Count Three and adds common-law claims of trespass at Count Four, conversion at Count Five, and unjust enrichment at Count Six.  (<u>Id.</u> at 64-68).  Cabot's recent alleged transgressions have been incorporated throughout the proposed second amended complaint as supplemental factual matter.  (<u>See generally</u> <u>id.</u> ¶¶ 22-189).

Cabot asserts that proposed Count Two should be rejected because it is either redundant of the existing breach-of-contract claim or would otherwise fail under Pennsylvania law.  (Doc. 17 at 7-13).  Cabot also contends that the proposed second amended complaint as a whole violates federal pleading standards to the extent it contains inappropriate legal commentary as well as lengthy allegations which Cabot says make it "impossible" to answer.  (<u>Id.</u> at 13-15).  Cabot does not substantively challenge plaintiffs' proposed claims for trespass, conversion, and unjust enrichment.  Nor does Cabot imply that plaintiffs' request for leave to amend is the product of undue delay or improper motive, or that granting the motion will cause undue prejudice to Cabot.  See <u>Foman</u>, 371 U.S. at 182.  We thus cabin our analysis to Cabot's two discrete arguments, which we will address *seriatim*.

### A.     Challenge to Count Two

Our analysis of plaintiffs' proposed claim for breach of the implied contractual duty of good faith and fair dealing is governed by Pennsylvania substantive law.  See Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  Under Pennsylvania law, an oil and gas lease is treated in accordance with standard contract principles.  T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012) (citing Willison v. Consol. Coal Co., 637 A.2d 979, 982 (Pa. 1994)).  A breach-of-contract claim in the Commonwealth requires three familiar elements: (1) existence of a contract, including its essential terms; (2) breach of a duty imposed by that contract; and (3) resulting damages. See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016) (citing J.F. Walker Co. v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).

Plaintiffs' existing breach-of-contract claim in Count One is premised on Cabot's alleged breach of duties arising under the express terms of the lease.  They claim that Cabot violated the lease's express terms concerning acreage limitations, unitization, compliance with Commonwealth regulations, and lessor consent.  (Doc. 13-2 ¶¶ 194, 196-97, 199, 201).  In proposed Count Two, plaintiffs seek to widen the scope of potential liability by adding a claim for breach of the implied contractual duty of good faith and fair dealing.  (Id. at 62).  Specifically, plaintiffs request leave to add a claim that Cabot "breached the duty of good faith and fair dealing" by:

> (a) engaging in bad faith pooling and unitization of the
> Hordis Property; (b) using the Hordis Property for the
> improper purpose of holding by production more than

1,800 acres of leased land within Susquehanna County;
(c) failing to engage in good faith efforts to fully develop
the Hordis Units; (d) initially acknowledging that
Plaintiffs' consent was required for operation of multiunit
wells but advancing the opposite position once consent
was not obtained; (e) repeatedly providing Plaintiffs
with materially inaccurate and incomplete information
to induce Plaintiffs to consent to multi-unit wells;
(f) engaging in bad faith negotiations with Plaintiffs to
obtain their consent; (g) failing to inform Plaintiffs of
its intentions to amend Hordis Unit 1; (h) purporting
to amend Hordis Unit 1 after the Hordis Property had
been in production for nearly five years; (i) drilling four
additional wells off the Hordis Pad without required
notification; and (j) unilaterally choosing to proceed
with the fracking and development of Hordis Wells 6-9,
notwithstanding the pendency of this litigation and over
Plaintiffs' repeated objections.

(Id. ¶ 209).

Cabot asserts that leave to add Count Two would be futile because the

alleged breaches underlying plaintiffs' proposed implied-duty claim are essentially

duplicative of the alleged breaches that support their existing express-duty claim.

(See Doc. 17 at 10-13).  We agree that most of the good-faith allegations supporting

Count Two are either duplicative or derivative of those underlying Count One.  But

Cabot's argument also raises a further and more fundamental issue: whether Count

Two states a cognizable claim at all, such that parsing non-duplicative material

might save any aspect of the claim.  We conclude that, under the current state of

Pennsylvania law, it does not.

The viability of the proposed count turns on two questions: whether the implied duty of good faith and fair dealing applies to the parties' lease,[2] and, if it does, whether a breach of that duty can independently support a cause of action sounding in contract, *i.e.*, a separate and distinct claim for breach of the implied duty of good faith and fair dealing. The Pennsylvania Supreme Court has not yet had occasion to answer either question. See Ash v. Continental Ins. Co., 932 A.2d 877, 883 n.2 (Pa. 2007). It has, however, noted "considerable disagreement" among the Commonwealth's intermediate appellate courts on the subject. Id. The court in Ash identified seeming tension between two lines of cases: those adopting Section 205 of the Restatement (Second) of Contracts to hold that a duty of good faith and fair dealing is implied in every contract, see id. (citing Herzog v. Herzog, 887 A.2d 313, 317 (Pa. Super. Ct. 2005); John B. Conomos, Inc. v. Sun Co., Inc. (R&M), 831 A.2d 696, 706-07 (Pa. Super. Ct. 2003)), and those indicating that the duty is implied only in limited circumstances, see id. (citing Agrecycle, Inc. v. City of Pittsburgh, 783 A.2d 863, 867 (Pa. Commw. Ct. 2001); Dep't of Transp. v. E-Z Parks, Inc., 620 A.2d 712, 268 (Pa. Commw. Ct. 1993); Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank & Tr. Co., 560 A.2d 151, 153-54 (Pa. Super. Ct. 1989)). The court also acknowledged (without expressly adopting) a middle ground charted in Fraser v. Nationwide Mutual Insurance Co., 135 F. Supp. 2d 623 (E.D. Pa. 2001), rev'd in part on other grounds, 352 F.3d 107 (3d Cir. 2003), where the district court held

---

[2] Cabot does not dispute that the implied duty of good faith and fair dealing applies to the parties' lease. (See Doc. 17 at 10-13). Cabot only challenges plaintiffs' ability to state a claim for breach of that duty here. (See id.)

that while the duty of good faith and fair dealing "is implied it in every contract[,] . . . it does not create a cause of action in every case." <u>Ash</u>, 932 A.2d at 883 n.2 (quoting <u>Fraser</u>, 135 F. Supp. 2d at 643).

We find that <u>Fraser</u> reflects an appropriate reconciliation of these two lines of cases. It is consistent with the general consensus among the Commonwealth's intermediate courts that the duty of good faith and fair dealing is implied in every contract. <u>See, e.g.</u>, <u>Herzog</u>, 887 A.2d at 317; <u>John B. Conomos, Inc.</u>, 831 A.2d at 706-07; <u>Somers v. Somers</u>, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992). At the same time, it respects the state courts' historical reluctance to recognize an independent claim for breach of that duty—sounding in contract or otherwise—except in very narrow situations: specifically, relationships between franchisor and franchisee, insurer and insured, and (sometimes) employer and employee. <u>See, e.g.</u>, <u>Creeger Brick & Bldg. Supply, Inc.</u>, 560 A.2d at 154; <u>see also</u> <u>Agrecycle, Inc.</u>, 783 A.2d at 867; <u>E-Z Parks, Inc.</u>, 620 A.2d at 717.

A survey of Pennsylvania law reveals that in the usual case, the implied duty of good faith and fair dealing provides an informative lens through which to discern contracting parties' obligations and expectations. That is, it informs the meaning of existing terms but cannot supply new ones. The cases cited in <u>Ash</u> bear this out. In <u>Herzog</u>, the court invoked the implied duty when interpreting a marital settlement agreement. <u>See</u> <u>Herzog</u>, 887 A.2d at 317. The court looked first to the agreement's express terms to determine what was required under the agreement; the court then supplemented its understanding of those terms by referencing the implied duty of good faith and fair dealing, which it said required each party to act consistent

with the "justified expectations" of the other.  Id.  The court did not suggest that

either party had "breached" the implied duty itself or that the implied duty

supplied some obligation beyond those contemplated by the agreement's express

terms.  In John B. Conomos, Inc., the court approached the implied duty similarly,

explaining that it is "tied specifically to" the express terms of a contract—at issue

there, a provision concerning one party's inspection rights—and helps the court to

"harmonize the reasonable expectations of the parties" as pertain to those terms.

John B. Conomos, Inc., 831 A.2d at 706-07 (citation omitted).  The court underscored

that the duty of good faith and fair dealing "cannot imply a term not explicitly

contemplated by the contract."  Id.

        The Third Circuit has read Pennsylvania law this way too.  See Northview

Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91-92 (3d Cir. 2000).  Northview

Motors acknowledged that some courts in the Commonwealth have said that the

duty of good faith and fair dealing is implied in all contracts.  Id. at 91 (collecting

cases).  But it also observed, as we have, that a claim for breach of that duty will lie

"only in very limited circumstances."  Id. (citing Creeger Brick & Bldg. Supply, Inc.,

560 A.2d at 154).  The court described the implied duty as more of "an interpretive

tool" for measuring expectations under a contract's express terms, emphasizing

that it "is not divorced from the specific clauses of the contract" and "cannot be

used to override an express contractual term."  Id. (citations omitted).

        Other courts have construed Northview Motors as suggesting that

independent claims for breach of the implied duty of good faith and fair dealing are

cognizable in contract so long as the implied-duty claim is premised on different

conduct than the express-duty claim.  See, e.g., Slamon v. Carrizo (Marcellus) LLC,

No. 3:16-CV-2187, 2017 WL 3877856, at *7-8 (M.D. Pa. Sept. 5, 2017).  Plaintiffs take

this same position, maintaining that their good-faith claim is viable because the

implied terms and challenged conduct underlying Count Two are "separate and

distinct" from the express terms and challenged conduct underlying Count One.

(See Doc. 19 at 11).  This expansion of the implied duty does not comport with

Pennsylvania law, and it severs the relevant Northview Motors language from

important context.  Indeed, it is directly refuted by the Third Circuit's emphasis,

in closing, that the implied-duty claim must be limited to "where it is essential,"

cautioning that otherwise, "the doctrine could become an all-embracing statement

of the parties' obligations under contract law, imposing unintended obligations

upon parties and destroying the mutual benefits created by legally binding

agreements."  Northview Motors, 227 F.3d at 92.

      We read this body of law to mean that while the implied duty of good

faith and fair dealing may apply to all contracts in the Commonwealth, a contract

claim for breach of that duty exists only in very narrow circumstances, none of

which are applicable here.  See id. at 91-92 (citing Creeger Brick & Bldg. Supply,

560 A.2d at 154); Fraser, 135 F. Supp. 2d at 643.  In an ordinary case such as this, the

duty attaches to the express terms of the contract, and it provides a lens through

which to assess the parties' reasonable expectations regarding those terms, but it

supplies no further obligations beyond those expressly articulated in the contract.

See Herzog, 887 A.2d at 317; John B. Conomos, Inc., 831 A.2d at 706-07; see also

Northview Motors, 227 F.3d at 91.  Accordingly, plaintiffs are free to argue that the

implied duty infuses the express lease terms invoked in Count One and informs any assessment of whether those terms were breached.  But we must reject as futile plaintiffs' attempt to plead a breach-of-contract claim arising from the implied duty of good faith and fair dealing itself.[3]

### B.   Remaining Objections

Cabot further contends that plaintiffs' second amended complaint fails to meet federal pleading standards.  (See Doc. 17 at 13-15).  We have reviewed the proposed pleading and disagree with Cabot's exaggerated assertion that it "is inappropriate, confuses the issues, and makes it nearly impossible for Cabot" to answer.  (See id. at 15).  The proposed second amended complaint clearly lays out plaintiffs' grounds for relief, which parties are implicated, and the precise actions that are alleged to have violated plaintiffs' rights.  (See generally Doc. 13-2).  To the extent Cabot takes issue with any individual enumerated paragraphs, it is free to

---

[3] The decisions cited by plaintiffs do not persuade us otherwise.  In Slamon, 2017 WL 3877856, the court assumed for purposes of the Rule 12(b)(6) motion before it that the implied duty existed in the contract because "neither party ha[d] argued" that it did not.  Slamon, 2017 WL 3877856, at *7.  The decision does not explore whether Pennsylvania law recognizes a claim for breach of that duty in all cases and does not engage with precedent suggesting that such a claim will lie only in narrow circumstances, none of which applied in that case.  Both Chanel, Inc. v. Jupiter Group, Inc., No. 3:04-CV-1540, 2006 WL 1793223, at *6 (M.D. Pa. June 27, 2006), and Stewart v. SWEPI, LP, 918 F. Supp. 2d 333, 343-44 (M.D. Pa. 2013), dismissed freestanding counts for breach of the implied duty of good faith and fair dealing, finding that such claims sounded in contract and were thus "subsumed" by separate breach-of-contract claims premised on express contractual terms.  Stewart, 918 F. Supp. 2d at 343-44; see Chanel, 2006 WL 1793223, at *6.  Neither decision stands for the proposition that plaintiffs offer here: that the implied duty of good faith and fair dealing might itself support a claim for breach that is untethered to and distinct from any express term in the lease.  (See Doc. 19 at 10-11).

deny those allegations and can rest assured that this court will disregard any legal conclusions as required under the <u>Twombly</u> and <u>Iqbal</u> pleading regime.  <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

## IV.   <u>Conclusion</u>

For the reasons set forth herein, we will grant in part and deny in part plaintiffs' motion (Doc. 13) for leave to amend.  Plaintiffs may file a second amended complaint in conformity with the foregoing discussion.  An appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    May 5, 2020