## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT HORDIS, VICTORIA HORDIS, and HORDIS FAMILY CABOT, L.P.,** | : : : : | **CIVIL ACTION NO. 3:19-CV-296** |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : : | |
| **v.** | : : | |
| **CABOT OIL & GAS CORPORATION,** | : : | |
| **Defendant** | : : | |

### MEMORANDUM

Plaintiffs Robert Hordis, Victoria Hordis, and Hordis Family Cabot, L.P. ("Hordis L.P."), assert, via a second amended complaint, claims for breach of contract, declaratory relief, trespass, conversion, and unjust enrichment against defendant Cabot Oil & Gas Corporation ("Cabot").  Cabot filed an answer to the complaint and asserted counterclaims for declaratory judgment against Hordis L.P. and trespass against Robert Hordis.  Plaintiffs move to dismiss Cabot's counterclaims under Federal Rule of Civil Procedure 12(b)(6).  We will grant the motion and dismiss Cabot's counterclaims.

## I.   Factual Background & Procedural History

Plaintiffs Robert and Victoria Hordis are husband and wife, and limited partners of Hordis L.P.  (Doc. 29 ¶¶ 13, 15).  Hordis L.P.'s other limited partners are Janet Hordis, Charles Hordis, Jennifer Austin, the Catherine Strayer Trust, and Catherin Strayer.  (Id. ¶ 15).  Hordis L.P.'s general partner is Mt. Laurel Group LLC, a Pennsylvania limited liability company with its principal place of business in

Hop Bottom, Pennsylvania.  (Id. ¶ 16).  Robert Hordis is the sole and managing member of Mt. Laurel Group LLC.  (Id. ¶ 17).

### A.    The Lease

In 2007, Robert Hordis's parents—Charles and Janet Hordis—entered into an oil and gas lease with Cabot regarding a 194.43-acre plot of land they owned in Lathrop Township, Pennsylvania (the "Hordis property").  (Id. ¶¶ 28, 29; see also Doc. 29-1, Ex. A (lease agreement)).  The lease identified Charles and Janet Hordis as the lessors and Cabot as the lessee.  (See Doc. 29-1, Ex. A).  The lease provided Cabot the exclusive right to explore, develop, and produce gas and other hydrocarbons from the Hordis property.  (Id. ¶ 1).  In exchange, Cabot was to pay royalties on the sale of gas obtained from the well.  (Id. ¶ 3).

The lease contains an initial five-year primary term and an option for Cabot to extend the primary term by an additional five years.  (Id. ¶¶ 2, 13).  Alternatively, the lease term extends "as long thereafter as oil or gas is produced . . . in paying quantities."  (Id. ¶ 2).  The lease also gives Cabot some discretion to pool or combine the Hordis property with "any other land, lease, leases, parts thereof, or formation, depth, or depths thereunder, in the vicinity of the premises covered" by the lease.  (Id. ¶ 5).  That same provision further explains that "[n]o unit may exceed 640 acres in size unless prescribed or permitted by applicable law or administrative order, rule or regulation."  (Id.)  Once a unit is formed, the lessee can reduce or enlarge the unit no more or less than 15%, and only if

> in the Lessee's judgment it is necessary or advisable to do
> so in order properly to explore or develop or operate the
> premises, in order to promote the conservation of oil or

> gas in Lessee's judgment, in order to include an omitted
> lease or area within a unit, in order to comply with all
> location or distance rules or regulations, and in order to
> make adjustments to acreage (after adequate showings) in
> tracts included within a unit area, but each such
> reduction or enlargement shall only be effective
> prospectively.

(Id.)  Plaintiffs allege Cabot materially breached these and several other lease

provisions, in addition to the implied duty of good faith and fair dealing.  (Doc. 29 ¶¶

190-209).

The lease also establishes Cabot's right of access to the Hordis property.  The

lease specifically provides:

> In exploring for, developing, producing and marketing oil,
> gas and other substances covered hereby on the leased
> premised or lands pooled or unitized therewith, *Lessee*
> *shall have the right to ingress and egress* along with the
> right to conduct such operations on the leased premises
> as may be reasonably necessary for such purposes,
> including but not limited to geophysical operations, the
> drilling of wells, and the construction and use of roads,
> canals, pipelines, tanks, water wells, disposal wells,
> injection wells, pits, electric and telephone lines, power
> stations and other facilities to discover, produce, store,
> treat and/or transfer production.

(Doc. 29-1, Ex. A ¶ 8 (emphasis added)).  The lease contains an integration clause

that states that "[t]his lease embodies the entire agreement between the parties and

no representation or promise on behalf of either party shall be binding unless

contained herein or mutually agreed to in writing by all parties hereto."  (Id. ¶ 15).

Charles and Janet Hordis assigned their interest in the Hordis lease to

Hordis L.P. on March 4, 2014.  (Doc. 29 ¶ 37).  Two weeks later, Charles and Janet

Hordis conveyed the Hordis property and all its mineral rights to Robert and
Victoria Hordis.  (Id. ¶ 38).

### B.    Plaintiffs' Second Amended Complaint

In their complaint, plaintiffs assert state-law claims for breach of contract
(Count One), declaratory relief (Count Two), trespass (Count Three), conversion
(Count Four), and unjust enrichment (Count Five).  (See Doc. 29 ¶¶ 190-225).  Each
of these claims rests on a foundation of factual allegations that Cabot materially
breached the terms of the lease on several occasions, rendering the lease null and
void as of the time of those material breaches.  (See id. ¶¶ 193-207, 211-213, 215-217,
222-224, 227-229).  With respect to their declaratory judgment claim, plaintiffs
request a judicial declaration that "(a) the Hordis Lease is null and void as of the
time of Cabot's material breaches; (b) Plaintiffs' further performance under the
Hordis lease is excused; and (c) the Unit 1 Amendment is invalid and unenforceable
by Cabot against Plaintiffs."  (Id. ¶ 213).

### C.    Cabot's Answer and Counterclaims

Cabot answered plaintiffs' complaint with several defenses and two
counterclaims.  (See Doc. 34).  Cabot mounts three defenses relevant to the instant
motion.  First, "[p]laintiffs' claims are barred, in whole or in part, by a license,
payment, release, or ratification."  (Id. at 40 ¶ 7).  Second, "[p]laintiffs' claims are
barred, in whole or in part, because [p]laintiffs elected to receive and continue to
receive, millions of dollar[s] in royalties under the lease after the date of the alleged
breaches, and therefore, are barred from claiming that the lease is null and void."
(Id. at 41 ¶ 18).  And third, "[p]laintiffs' claims are barred, in whole or in part,

because they substantively elected against the remedies that they now seek." (Id. ¶ 19).

Cabot also brings counterclaims for declaratory judgment against Hordis L.P. and for trespass against Robert Hordis.  In its declaratory judgment counterclaim, Cabot requests an order

> (a)  determining and declaring that the lease cannot be rescinded, but remains a valid, binding, and enforceable contract between the parties;
>
> (b)  determining and declaring that the lease is not null and void, but remains a valid, binding, and enforceable contract between the parties;
>
> (c)  determining and declaring that Hordis LP's further performance under the lease is not excused;
>
> (d)  determining and declaring that the Hordis LP, through its conduct, elected against and waived any available remedy of rescission and/or nullification for the purported material breaches of contract;

(Id. at 62 ¶ 138(a)-(d); see also id. ¶¶ 125-137).  Cabot claims that Hordis L.P. is foreclosed from seeking rescission or nullification because it "elected against a remedy of rescission and/or nullification for the purported breaches of contract . . . when it continued to accept the benefits under the lease by expressly accepting royalty payments due thereunder." (Id. at 42-43 ¶ 5; see also id. at 61 ¶ 136; id. at 48-58 ¶¶ 21-106).  Cabot supports its claim with allegations that both before and after the purported material breaches, Hordis L.P. or the original lessors accepted royalty payments.  (Id. at 44-48 ¶¶ 17-20).  Cabot specifically alleges that Hordis L.P. accepted royalties between July 8, 2014, and April 15, 2020.  (Id. at 45-48 ¶¶ 19, 20).

### D.    Procedural History

Plaintiffs filed the original complaint in February of 2019 and an amended complaint in March of 2019, to which defendants answered.  Plaintiffs thereafter sought leave to file a second amended complaint.  We granted in part and denied in part that motion in May of 2020.  Plaintiffs filed their second amended complaint consistent with our order on May 8, 2020.  Cabot timely answered that complaint and asserted several defenses and two counterclaims of its own.  Plaintiffs move to dismiss Cabot's counterclaims under Federal Rule of Civil Procedure 12(b)(6).  The motion is fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Courts evaluate motions to dismiss counterclaims under the same standard.  See Gerhart v. Energy Transfer Partners, L.P., No. 1:17-CV-01726, 2020 WL 6487484, at *3 n.7 (M.D. Pa. Nov. 4, 2020) (quoting Farkas v. Rich Coast Corp., No. 1:14-cv-272, 2015 WL 11517086, at *2 (M.D. Pa. Dec. 22, 2015)).

## III.  **Discussion**

Plaintiffs move to dismiss both of Cabot's counterclaims, which seek declaratory judgment against Hordis L.P. and allege trespass against Robert

Hordis.  For the following reasons, we agree with plaintiffs as to both challenges and will dismiss both counterclaims.

### A.    Trespass Counterclaim

Plaintiffs seek dismissal of Cabot's trespass counterclaim on two theories. First, that Cabot cannot state a trespass claim against Robert Hordis because Cabot does not have "exclusive use and possession" of the leased property.  And second, that Cabot's trespass claim is barred by the gist of the action doctrine.  We start and end with the gist of the action doctrine.

As a threshold matter, Cabot argues that plaintiffs are barred from employing the gist of the action doctrine against its trespass claim because Robert Hordis is not a signatory to the lease.  Both parties acknowledge that Robert Hordis did not sign the lease.  (Doc. 39-1 at 15 n.6; Doc. 42 at 3).  The lease was originally entered into by Charles and Janet Hordis, who conveyed their interest in the lease to Hordis L.P. and their interest in the Hordis property to Robert and Victoria Hordis.  (Doc. 29 ¶ 37).  Cabot relies on the court of appeals' decision in Frank C. Pollara Group, LLC v. Ocean View Investment Holding, LLC, 784 F.3d 177 (3d Cir. 2015), in arguing that this attenuated privity bars plaintiffs from invoking this doctrine.  In Pollara, the court of appeals recognized that the gist of the action doctrine is not *per se* inapplicable to nonsignatories.  Id. at 188-89.  At the same time, the doctrine does not apply simply because "somewhere in the factual mix of the case there was a contract."  Id. at 188.  Instead, application of the doctrine depends on a "'factually intensive inquiry' into the contract[] at issue and the relationships between the parties."  Id. at 189.  The Pollara court further explained that the court of appeals

had previously permitted the doctrine against a "sole principal and shareholder for the signatory" on the ground that they were both "bound and protected by the contract[]."  Id. (citing Addie v. Kjaer, 737 F.3d 854, 867-69 (3d Cir. 2013)).[1]

The gist of the action doctrine is not inapplicable in the instant matter simply because Robert Hordis is not a signatory to the lease.  Robert Hordis's parents conveyed to him and his wife the Hordis property that is now subject to the terms of the lease.  As the owners of property burdened by that lease, Robert Hordis and his wife are both "bound and protected" by it.  Id. (citing Addie, 737 F.3d at 867-69). Contrary to Cabot's contentions, Robert Hordis's essential status—albeit through a limited partnership, as both general partner and limited partner—is greater than any other individual connected to the lease agreement.  All told, Robert Hordis's interest in the Hordis property (and his interest in Hordis L.P.) sufficiently connects him to the contract in this case.  Plaintiffs may therefore assert the gist of the action doctrine against Cabot.

Plaintiffs argue that the parties' respective rights to enter the leased land derive from the lease such that Cabot's counterclaim equates to a claim for breach of contract.  (Doc. 39-1 at 12-14).  Under Pennsylvania's gist of the action doctrine, a contracting party may not bring a tort claim against another contracting party when the claim, although sounding in tort, is practically a claim for breach of contract.

---

[1] Both Pollara and Addie discussed the gist of the action doctrine under Virgin Islands law.  Both cases, however, consulted Pennsylvania law in defining the contours of the doctrine.  See id. at 186 ("Pennsylvania law is instructive in interpreting the gist-of-the-action doctrine in the Virgin Islands."); Addie, 737 F.3d at 868 n.7 ("[P]rior cases from this Court and the courts of Pennsylvania analyzing the doctrine are instructive. . . .").

See Bruno v. Erie Ins. Co., 106 A.3d 48, 53, 68 (Pa. 2014).  To determine whether a claim styled as a tort is in effect a contract claim, we look to the "nature of the duty alleged to have been breached."  Id.  As set forth in the seminal state supreme court decision, Bruno v. Erie Ins. Co.:

> [i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Id. (internal citations omitted).

Cabot's trespass counterclaim fails to survive the gist of the action doctrine.  The lease expressly establishes Cabot's ingress and egress rights.  (Doc. 29-1, Ex. A ¶ 8).  The parties nonetheless debate their respective possessory rights flowing from the lease, by easement or some form of ownership interest.  (See Doc. 39-1 at 8-11; Doc. 42 at 7-12).  But therein lies the flaw in Cabot's trespass counterclaim: it depends on Cabot's possessory rights vis-à-vis Robert Hordis *created by virtue of the lease*, and not "broader social dut[ies] owed to all individuals."  See Bruno, 106 A.3d at 68.  Rather than argue that Pennsylvania tort law grants Cabot the right to exclude Robert Hordis whether or not they are in privity, Cabot contends that this "oil and gas lease . . . actually involves the conveyance of property rights."  (Doc. 42 at 8 (quoting Nolt v. TS Calkins & Assocs., LP, 96 A.3d 1042, 1046 (Pa. Super. Ct. 2014) (citations omitted))).  Cabot elsewhere argues that this conveyance "allows

Cabot, *as an oil and gas lessee*, the right to exclude even the landowners" in certain circumstances.  (Id. at 1 (emphasis added)).  In so doing, Cabot implicitly recognizes that the parties' respective duties and rights derive from the lease, not from Hordis's broader social duties owed to those not in privity.

We recognize that our court of appeals has suggested that courts should be chary of barring claims pursuant to the gist of the action doctrine when the existence of a contract is in dispute.  See Pollara, 784 F.3d at 189 n.15 (collecting examples).  We also recognize that the parties in this action dispute whether an existing contract remains and, if it does not, when it ended by virtue of material breach.  But these disputes do not affect our analysis.  Assuming *arguendo* that the lease is null and void or rescinded, Cabot would have no legal basis on which to assert a property interest in the leased land "regardless of the contract."  Bruno, 106 A.3d at 68.  Unlike plaintiffs, who were originally conveyed the property and its mineral rights, Cabot's rights in the property—including the right to exclude others—stem entirely from the lease.  Cabot's trespass counterclaim therefore

depends on the validity of the lease and the rights it creates.   Therefore, we will dismiss Cabot's trespass counterclaim under the gist of the action doctrine.[2]

### B.    Declaratory Judgment Counterclaim

Plaintiffs argue that Cabot's declaratory judgment counterclaim should be dismissed as redundant of plaintiffs' complaint and Cabot's affirmative defenses. (Doc. 39-1 at 15-18).  Cabot responds that plaintiffs' challenge under Rule 12(b)(6) is procedurally improper and that its counterclaim is not wholly duplicative.  (Doc. 42 at 14-17).  We side with plaintiffs.

The Federal Declaratory Judgment Act states that "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[3]  District courts have discretion to decide whether and when to field a claim under the Declaratory Judgment Act.  Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).

---

[2] We acknowledge plaintiffs' alternative argument that Cabot cannot maintain a trespass action against Robert Hordis as owner of the property because it lacks exclusive possession of the property.  Oil and gas producers, who have an implied right to *reasonably* use and access the surface of the property to retrieve the subsurface minerals even against the owner of the surface, may do so only as necessary and "with due regard to the owner of the surface."  See Belden & Blake Corp. v. Com., Dep't of Conservation & Nat. Res., 969 A.2d 528, 532-33 (Pa. 2009) (citations and quotations omitted).  The above cited language from Belden & Blake appears to favor plaintiffs' alternative argument.  Nevertheless, we express no opinion on the matter as we dismiss the counterclaim under the gist of the action doctrine.

[3] Plaintiffs do not argue that this case lacks an "actual controversy."  (See generally Docs. 39-1, 43).

Courts may dismiss declaratory judgment counterclaims if "there is complete identity of factual and legal issues between the complaint and the counterclaim" such that dismissal of the complaint will moot the counterclaim. Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Tr., 674 F. Supp. 2d 562, 566 (D. Del. 2009) (quoting Aldens, Inc. v. Packel, 524 F.2d 38, 51-52 (3d Cir. 1975)); see also United States v. Vantage Tr. Fed. Credit Union, No. 3:17-CV-0348, 2018 WL 306920, at *7 (M.D. Pa. Jan. 5, 2018); Hunting v. Range Resources—Appalachia, LLC, No. 4:16-CV-00864, 2016 WL 7034686, at *6 (M.D. Pa. Dec. 2, 2016) (citations omitted); 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1406 (3d ed. 2020) (citations omitted). Similar logic applies to counterclaims said to be redundant of affirmative defenses. See Barnett v. Platinum Equity Capital Partners II, L.P., No. 2:16-CV-1668, 2017 WL 3190654, at *4-7 (W.D. Pa. July 27, 2017); Intercon Sols., Inc. v. Basel Action Network, 969 F. Supp. 2d 1026, 1065-66 (N.D. Ill. 2013), aff'd, 791 F.3d 729 (7th Cir. 2015); see also Perelman v. Perelman, No. 09-4792, 2012 WL 6645542, at *3 (E.D. Pa. Dec. 21, 2012) (collecting cases in amendment-of-pleading context).

However, courts may dismiss purportedly redundant claims "only when there is *no doubt* that they will be rendered moot by adjudication of the main action." Principal Life, 674 F. Supp. 2d at 566 (citing 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1406 (2d ed. 1990)). Courts are also more hesitant to dismiss purportedly duplicative counterclaims in cases involving contract interpretation, even when they are a "mirror image" of the existing claim. See Hunting, 2016 WL 7034686, at *6 (citations omitted); see also 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1406 (3d ed. 2020) (citations omitted). Courts

are more reluctant to dismiss counterclaims in this circumstance because "[a] ruling adverse to the plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested," and, even if a defendant's interpretation was correct, they would be deprived of a judgment declaring as much.  Hunting, 2016 WL 7034686, at *6 (quoting ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc., 652 F. Supp. 2d 552, 557 (D.N.J. 2009)).

Cabot's counterclaim subsumes the issues presented in plaintiffs' complaint and Cabot's affirmative defenses.  Resolution of the main action in this case necessarily requires that we determine whether the lease is null, void, or rescinded and, conversely, whether it is valid and enforceable.  (See Doc. 29 ¶¶ 190-209).  The answers to those questions will dictate whether plaintiffs' continued performance is excused.  (See id.)  Indeed, plaintiffs' complaint alleges that the contract is null and void, and that their further performance is excused as a result of Cabot's allegedly material breaches.  (See, e.g., Doc. 29 ¶¶ 190-209).  In its answer, Cabot defends these charges by asserting that plaintiffs are barred from seeking "the remedies that they now seek," (Doc. 34 at 41 ¶ 19)—that being a determination that "the lease should be rescinded and/or has been rendered null and void due to Cabot's material breaches," (id. at 61 ¶ 128)—because plaintiffs accepted royalties after the date of the alleged material breaches and thereby substantively elected against rescission or nullification, (id. at 41 ¶¶ 18, 19).

Cabot's declaratory judgment counterclaim echoes these affirmative defenses and supports them with factual allegations.  Relying on allegations regarding Hordis L.P.'s acceptance of royalty payments after Cabot's alleged material

breaches, (see id. at 40-58 ¶¶ 16-106), Cabot seeks a judicial declaration that the lease is valid, binding, and enforceable; that the lease is not rescinded, or null and void; that plaintiffs' performance is not excused; and, specifically, that Hordis L.P. elected against the remedies of rescission or nullification by virtue of its acceptance of royalty payments, (see id. at 62 ¶ 138(a)-(d).  Just like its affirmative defenses, Cabot's counterclaim seeks to rebut plaintiffs' allegations with the defense that Hordis L.P.'s conduct effectively excused Cabot's material breaches and bars it from seeking rescission or nullification.  We will therefore exercise our discretion and dismiss Cabot's declaratory judgment counterclaim.

## IV.    Conclusion

We will grant plaintiffs' motion (Doc. 39) to dismiss.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated:     February 3, 2021